


**FILED & ENTERED**

MAY 28 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY tatum        DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br>**JRG PROPERTIES, LLC,**<br>　　　　　Debtor. | Case No. 2:12-bk-35303-RK<br>Chapter 11<br>**STATEMENT OF DECISION RE MOTION FOR ANNULMENT OF AUTOMATIC STAY BY DAYCO FUNDING CORPORATION**<br>Hearing: May 7, 2013<br>Time: 10:30 a.m.<br>Courtroom: 1675 |

　　　　By separate order, the court has denied the motion by Dayco Funding Corporation ("Dayco") for annulment of the automatic stay in relation to the debtor's property located at 401-403 South Sultana Avenue, Ontario, California (the "Property"), filed with the court on April 10, 2013. In this statement of decision, the court explains its reasons for denying the motion.

　　　　Pursuant to an order to show cause issued by this court, the court conducted a hearing on October 9, 2012 why the bankruptcy case should not be dismissed for failure to timely provide information reasonably requested by the United States Trustee, i.e., monthly operating reports. See, 11 U.S.C. § 1112(b)(4)(H); 28 U.S.C. § 586(a)(3)(D). Debtor, the United States Trustee, movant Dayco, and other interested parties attended

this hearing through counsel.  After hearing from counsel, the court orally ruled at the hearing on October 9, 2012 that the case would be dismissed for failure to timely file United States Trustee monthly operating reports and directed the United States Trustee to submit a proposed order for dismissal of the case.  On October 18, 2012, the United States Trustee submitted a proposed order for dismissal (this date is indicated on the proof of service of the proposed order).  The order dismissing debtor's bankruptcy case was not signed and entered on the case docket until October 18, 2012 (the "dismissal order").  The bankruptcy case was closed on November 13, 2012.

However, prior to entry of the dismissal order in this case, on October 10, 2012, Dayco proceeded with a foreclosure sale of the property, which apparently was noticed before the hearing on October 9, 2012.  But for the automatic stay which remained in effect until the bankruptcy case was dismissed pursuant to 11 U.S.C. § 362(c)(2), pursuant to nonbankruptcy state law, Dayco became the owner of the property by credit bid, and obtained a trustee's deed upon sale.

On March 1, 2013, Dayco brought a motion to reopen the bankruptcy case in order to file the instant motion for retroactive relief from the automatic stay, or annulment of the automatic stay to validate its foreclosure sale.  The court granted the motion to reopen the case by order entered March 20, 2013.  On April 10, 2013, Dayco filed this motion for annulment of the automatic stay, so that the trustee's deed upon sale would be valid and enforceable on grounds that the sale took place after the court's oral ruling to dismiss the case, though before the actual written order of dismissal was signed and entered.

A motion for relief from stay requesting annulment of the stay operates to validate acts taken while the automatic stay was in effect.  The purpose of annulment of the stay is to protect "creditors and third parties who have, innocently and without knowledge of the case, taken actions or detrimentally changed their positions in pursuit of their state or federal remedies." *In re Williams*, 124 B.R. 311, 316 (Bankr. C.D. Cal. 1991).  Courts are reluctant to validate actions taken in violation of the automatic stay.  *See In re Shamblin*, 890 F.2d 123, 126 (9th Cir. 1989); *In re Williams,* 124 B.R. at 316.  As the court stated in

Case 2:12-bk-35303-RK    Doc 78    Filed 05/28/13    Entered 05/28/13 15:17:15    Desc
                         Main Document    Page 3 of 8

*Williams,* such power to annul the stay should be exercised "sparingly," noting the admonishment of the Ninth Circuit in *Shamblin* that "[a]ny equitable exception to the automatic stay should be narrow and applied only in extreme circumstances. *Id., citing In re Shamblin,* 890 F.2d at 126.

      Dayco argues that annulment should be granted because that this is a bad faith filing because "[t]his was a Debtor that entered the bankruptcy with virtually no business, acted in bad faith during the bankruptcy, and has continued to do so." *Memorandum of Points and Authorities in Support of Motion* at 10. According to Dayco, the court should allow stay annulment because "[i]n this case, the Debtor 'lucked out' because Dayco foreclosed on the Property after the Court announced dismissal of the case but before the Order for Dismissal was entered" and, "[h]ad Dayco waited until October 19, 2012—9 days after its foreclosure sale was conducted—to conduct the sale, the Debtor would not have bought itself additional months of time to use and possess the Property which it has now obtained by its 'I got you moment'." *Id.* According to Dayco's president, Mr. Dayani, he was advised on October 9, 2012 by Dayco's counsel that the case was dismissed, so Dayco credit-bidded the amount owed on the property at the foreclosure sale on the property, which had been continued to October 10, 2012. *See Declaration of H. Sean Dayani in Support of Motion* at 7-8.

      Apparently, Dayco's president was under the erroneous impression that the foreclosure sale could be held because the bankruptcy case was dismissed, but this indicates that he may not have been properly advised of the effect of the court's oral ruling. The general rule is that a judgment is effective when docketed by the clerk. *See* Fed. R. Civ. P. 58; Fed. R. Bankr. P. 5003, 9021; *In re Beatty*, 162 B.R. 853, 857-858 (9th Cir. BAP 1994) (conversion of case is effective when written and docketed), *overruled on other grounds by Rosson v. Fitzgerald (In re Rosson),* 545 F.3d 764 (9th Cir. 2008); *In re Rebeor*, 89 B.R. 314, 320 (Bankr. N.D. N.Y. 1988) (oral ruling converting case is not operative upon utterance). Thus, the order dismissing the case was not effective until entered or docketed by the clerk.

1       As a matter of law, Dayco was on notice of the pendency of debtor's bankruptcy
2  case and the case was not formally dismissed until the order for dismissal was entered
3  on the court's case docket, and thus, is not an "innocent" creditor because Dayco
4  appeared at the dismissal hearing on October 9, 2012 and is charged with knowledge of
5  the proceedings at the hearing.  The circumstances here include that Dayco's
6  counsel was present at the hearing when the court directed the United States
7  Trustee to submit a proposed order for dismissal for review and approval of the
8  court after the oral ruling and that the applicable law is that a judgment or final
9  order is not effective until officially entered by the court on the docket of the case.
10 At least, counsel knew or should have known that the dismissal was not final until
11 the actual order was approved and entered on the docket.  Dayco does not
12 explain in its papers why this information did not get across to its president and
13 management.  Thus, Dayco should have known that the automatic stay was in effect
14 until the court signed and entered the dismissal order.
15      The equities favor the debtor in this case, because the debtor did not deceive
16 Dayco with respect to what happened at the hearing on the order to show cause, and the
17 action taken by Dayco cannot easily be undone.  *See In re Shamblin*, 890 F.2d at 126;
18 *Fjeldsted v. Lien (In re Fjeldsted)*, 293 B.R. 12, 21-24 (9th Cir. BAP 2003).  Even
19 considering the problems with the bankruptcy case discussed at the dismissal hearing on
20 October 9, 2012, this court is reluctant to retroactively validate Dayco's action of
21 foreclosing on Debtor's property before the written order for dismissal was properly
22 entered unless a good reason for deviating from the normal rules exists.  Some courts
23 have held that, in emergency situations, an oral ruling can be effective.  *See In re Sewell*,
24 345 B.R. 174, 181 (9th Cir. BAP 2006); *In re Brown*, 290 B.R. 415, 419 (Bankr. M.D. Fla.
25 2003).  However, the matter is within the discretion of the bankruptcy court.  *In re Sewell*,
26 345 B.R. at 182.  This court does not find such emergency circumstances exist here to
27 warrant the exercise of discretion to grant stay annulment.  *Id.*  Dayco "jumped the gun"
28 and should have properly waited for entry of the final order of dismissal by the court.

1 | These are not emergency circumstances, nor are they are extreme circumstances to
2 | warrant the requested equitable relief. *Id.; In re Shamblin,* 890 F.2d at 126.
3 |   The Ninth Circuit Bankruptcy Appellate Panel concluded that the proper standard
4 | for the courts in this circuit for determining "cause" under 11 U.S.C. § 362(d) to grant
5 | retroactive relief from the automatic stay is a "balancing of the equities." *In re Fjeldsted,*
6 | 293 B.R. at 24, *citing, National Environmental Waste Corp. v. City of Riverside (In re*
7 | *National Environmental Waste Corp.),* 129 F.3d 1052, 1055 (9th Cir. 2007). Despite the
8 | stringent language of the Ninth Circuit's opinion in *Shamblin* that retroactive relief from
9 | stay should be granted only in "extreme circumstances," the Bankruptcy Appellate Panel
10 | analyzed the actual cases decided by the Ninth Circuit on retroactive relief from stay,
11 | including *Shamblin*, which actually applied a "balancing of the equities" standard. *In re*
12 | *Fjeldsted*, 293 B.R. at 24, *citing inter alia, In re Shamblin*, 890 F.2d at 126, *Schwartz v.*
13 | *United States (In re Schwartz)*, 954 F.2d 569, 573 (9th Cir. 1992) and *In re National*
14 | *Environmental Waste Corp.*, 129 F.3d at 1055. The BAP in *Fjeldsted* observed that the
15 | courts generally focused on two factors: (1) whether the creditor was aware of the
16 | bankruptcy petition; and (2) whether the debtor engaged in unreasonable conduct, or
17 | prejudice would result to the creditor, but also looked at many other factors bearing on
18 | the good faith of the debtor and the creditor, the prejudice to the parties, and the judicial
19 | or practical efficacy of annulling the stay. 293 B.R. at 24-25.
20 |   The BAP in *Fjeldsted* suggested that a court consider the following factors in
21 | deciding whether to annul the stay: (1) number of filings; (2) whether, in a repeat filing
22 | case, the circumstances indicate an intention to delay and hinder creditors; (3) a
23 | weighing of the extent of prejudice to creditors or third parties if the stay relief is not made
24 | retroactive, including whether harm exists to a bona fide creditor; (4) the debtor's overall
25 | good faith (totality of the circumstances); (5) whether the creditor knew of the stay but
26 | nonetheless took action, thus compounding the program; (6) whether the debtor has
27 | complied and is otherwise complying with the Bankruptcy Code and rules; (7) the relative
28 | ease of restoring the parties to the status quo ante; (8) the costs of annulment to the

debtor and to the creditor; (9) how quickly the creditor moved for annulment, or how quickly the debtor moved to set aside the sale of violative conduct; (10) whether, after learning of the bankruptcy, the creditor proceeded to take steps in continued violation of the stay, or whether the creditor moved expeditiously to gain relief; (11) whether annulment of the stay will cause irreparable injury to the debtor; and (12) whether stay relief will promote judicial economy or other efficiencies. 293 B.R. at 25. After enumerating these twelve factors, the BAP cautioned against mechanical application of these factors: "Mindful that such lists are capable of being misconstrued as inviting arithmetic reasoning, we emphasize that these items are merely a framework for analysis and not a scorecard." *Id.* at 25. The BAP then added the following comment: "In any given case, one factor may so outweigh the others as to be dispositive." *Id.*

This court agrees with the BAP's analysis and conclusion in *Fjeldsted*, relying upon *In re National Environmental Waste Corp., supra*, that the proper standard for courts in this circuit in determining whether to annul the stay is "balancing of the equities." *Id.* at 24-25. The court also finds the enumerated stay annulment factors listed in *Fjeldsted* to be helpful and instructive. *Id.* Although the *Fjeldsted* factors appear to be mixed in this case, the court concludes that the dispositive factors are that the creditor, Dayco, knew that the stay remained in place until the written order for dismissal was entered, but took action to credit-bid at the noticed foreclosure sale before the stay was lifted from the dismissal of the case, meaning the sale was void without retroactive relief from stay, thus compounding the problem, and did not move quickly for annulment. The creditor, Dayco, only moved for annulment five months later after encountering difficulties with enforcement of its foreclosure purchase from resistance by the debtor. While the debtor is not completely blameless under the *Fjeldsted* factors—since the bankruptcy case was dismissed for lack of compliance with the Bankruptcy Code and rules and debtor was not barred from refiling for bankruptcy relief, and arguably, there is no prejudice to the debtor if retroactive stay relief is granted—the problem here is that the creditor who presumably had control of the noticed foreclosure sale as the beneficiary of

the trust deed and the credit bidder at the foreclosure sale, took advantage of the situation and could have complied with the proper legal procedures by delaying the foreclosure sale until the stay was properly lifted when the case was formally dismissed. The creditor was aware of the noticed foreclosure sale for the day after the hearing on the motion to dismiss, if not had caused it to be so scheduled as the beneficiary of the trust deed, and was also aware that the bankruptcy case was not formally dismissed, lifting the stay, until the court entered the dismissal order after directing submittal of a proposed order by counsel for the United States Trustee.  It is apparent to the court that despite the rules, the creditor felt it did not have to wait until the formal dismissal process was completed.   Granting stay annulment here would reward the creditor for "jumping the gun" and would condone a lack of respect for the judicial process and the rule of law, and thus, stay annulment should not be granted under the circumstances.

For the foregoing reasons, the court denies the motion to annul the stay.

###

Date: May 28, 2013

_____
Robert Kwan
United States Bankruptcy Judge

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **STATEMENT OF DECISION RE MOTION FOR ANNULMENT OF AUTOMATIC STAY BY DAYCO FUNDING CORPORATION** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **May 28, 2013**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below:

Andrew K Alper    aalper@frandzel.com, efiling@frandzel.com;ekidder@frandzel.com
Andrew P Altholz    andrewpaltholz@msn.com
Elan S Levey    elan.levey@usdoj.gov, louisa.lin@usdoj.gov
Alvin Mar    alvin.mar@usdoj.gov
Dace Pavlovskis    Dace.Pavlovskis@sba.gov
Martha E Romero    Romero@mromerolawfirm.com
United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
Benjamin A Yrungaray    attorney@denovofirm.com

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by U.S. Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

JRG Properties, LLC
626 E 62nd St
Los Angeles, CA 90001

☐ Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or email address(es) indicated below:

☐ Service information continued on attached page